# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

TERRI N.,

    *Plaintiff,*

vs.

KILOLO KIJAKAZI, Commissioner of Social Security,

    *Defendant.*

Case No. 21-01019-EFM

## MEMORANDUM AND ORDER

Plaintiff Terri N. seeks judicial review of a final decision by Defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Plaintiff argues that the administrative law judge ("ALJ") erred in evaluating her subjective allegations regarding her mental limitations. Having reviewed the record, the Court affirms the Commissioner's final decision for the reasons stated below.

### I.  Factual and Procedural Background

Plaintiff was born in 1981. She previously performed retail, call center, mental health, and home health care work. In April 2019, Plaintiff applied for disability insurance benefits and supplement security income alleging a disability onset date in 2017. She later amended her alleged disability onset date to January 2019. She alleged multiple physical and mental impairments, including diabetes, high blood pressure, depression, anxiety, asthma, nerve discomfort, torn rotator

cuff, allergies, back pain, and light sensitivity. Plaintiff's claim was denied at the initial level on June 6, 2019, and upon reconsideration on June 10, 2019. Plaintiff filed a written request for a hearing, which was granted. The hearing was held by telephone (because of the Covid-19 pandemic) before an ALJ on July 23, 2020. Plaintiff, who was represented by counsel, testified at the hearing as well as a vocational expert.

In a written decision following the hearing, the ALJ found Plaintiff was not disabled under the Act at any time up to the date of the decision. She found Plaintiff had not engaged in substantial gainful activity since her amended disability onset date, and she had a number of severe impairments, including but not limited to, anxiety disorder, major depressive disorder, bipolar disorder, post-traumatic stress disorder, dependent personality disorder, obesity, asthma, allergic rhinitis, cervical radiculopathy, and tendinitis. The ALJ found, however, that none of these impairments or any combination thereof met the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.[1] She further found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> [She] can lift and carry 20 pounds occasionally with ten pounds frequently. She can sit six hours, stand and/or walk 6 hours. She can frequently climb ladders, ropes, and scaffolds, crawl, and crouch. She can occasionally reach overhead with her right upper extremity, which is her dominant upper extremity. She can frequently handle, finger, and feel with her dominant upper extremity. She can frequently work at a computer monitor. She can have occasional exposure to extreme cold, humidity, and pulmonary irritants, such as dusts, gases, fumes, noxious odors, and poorly ventilated areas. She can understand and carry out simple and routine instructions in a low-stress job, which is defined as having occasional changes in the work setting and occasional decision making required. She cannot perform fast-paced work, such as assembly line work with strict product quotas, but can perform goal-oriented work that can be completed by the end of the work shift. She can have occasional brief and superficial interaction with coworkers with no tandem activities and no interaction with the general public.

---

[1] 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.

The ALJ then found that while Plaintiff was not able to perform any past relevant work, considering her age, education, work experience, and RFC, a significant number of jobs existed in the national economy that Plaintiff could perform. Specifically, based on vocational expert testimony, the ALJ found that Plaintiff could perform jobs such as marking clerk, router, and collator-operator. The ALJ thus found Plaintiff was not disabled as defined by the Act.

Following the ALJ's decision, Plaintiff sought review by the Appeals Council. The Appeals Council denied review on August 20, 2020, making the ALJ's decision the final decision by the Commissioner. Plaintiff has therefore exhausted her administrative remedies. She timely seeks review of the Commissioner's final decision from this Court.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Act, which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[2] The Court must therefore determine whether the Commissioner made factual findings that are supported by substantial evidence in the record and applied the correct legal standard to those factual findings.[3] "Substantial evidence . . . is 'more than a mere scintilla.' "[4] "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "[5] The Court may "neither reweigh the

---

[2] 42 U.S.C. § 405(g).

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).

[4] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[5] *Id.* (quoting *Consol. Edison Co.*, 305 U.S. at 229).

evidence nor substitute [its] judgment for that of the [Commissioner]."[6] However, courts "also do not accept 'the findings of the Commissioner' mechanically or affirm those findings 'by isolating facts and labeling them as substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.' "[7] "Evidence is not substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion."[8]

"An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[9] This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[10]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[11] The steps are

---

[6] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[7] *K.I. v. Kijakazi*, 2021 WL 4149087, at *1 (D. Kan. 2021) (alteration in original) (quoting *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012)).

[8] *Id.* (quoting *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005)).

[9] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citations omitted).

[10] *Barkley v. Astrue*, 2010 WL 3001753, at *2 (D. Kan. 2010) (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920).

[11] *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); see 20 C.F.R. § 404.1520(a)(4).

designed to be followed in order.[12]  If it is determined, at any step of the process, that the claimant is or is not disabled, further evaluation is unnecessary.[13]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals one of a designated list of impairments.[14]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[15]

Upon determining the claimant's RFC, the Commissioner turns to steps four and five, which require the Commissioner to determine whether the claimant can either perform past relevant work or can generally perform other work that exists in the national economy, respectively.[16]  The claimant bears the burden in steps one through four to prove an impairment or combination of impairments that prevents the performance of past relevant work.[17]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged

---

[12] *Barkley*, 2010 WL 3001753, at *2.

[13] *Id.*; *Lax*, 489 F.3d at 1084 (citing *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)).

[14] *Lax*, 489 F.3d at 1084 (citations omitted).

[15] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)).

[16] *Id.* (citing *Williams*, 844 F.2d at 751).

[17] *Lax*, 489 F.3d at 1084 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)).

impairments, based on the claimant's RFC and other factors, the claimant could perform other work in the national economy.[18]

### III.    Analysis

Plaintiff argues that the ALJ's analysis of her subjective mental limitations is not supported by substantial evidence. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of the symptoms are consistent with the objective medical evidence and other evidence of record.[19] If they are consistent, then the AJL "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities."[20] If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities."[21] The ALJ considers the following factors in this analysis: (1) the claimant's daily activities; (2) "[t]he location, duration, frequency, and intensity of pain or other symptoms;" (3) "[f]actors that precipitate and aggravate the symptoms;" (4) "[t]he type, dosage, effectiveness, and side effects of any medication" the claimant takes to relieve pain or other symptoms; (5) treatment, other than medication, the claimant receives for relief of pain or other symptoms; (6) "[a]ny measures other than treatment . . . [the claimant] uses or has used relieve pain or other symptoms; and (7) "[a]ny other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms."[22]  The ALJ "need not make a

---

[18] *Id.* (quoting *Hackett*, 395 F.3d at 1171).

[19] Social Security Ruling 16-3p, 2016 WL 1119029, at *7 (March 28, 2016).

[20] *Id*.

[21] *Id*.

[22] *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (setting out the factors to consider).

'formalistic factor-by-factor recitation of the evidence,' " so long as she sets forth the specific evidence she relies on to support her findings.[23]  "[C]ommon sense, not technical perfection, is [the district court's] guide."[24]

At the hearing, Plaintiff testified that twice a week she had days where her mind raced, she could not concentrate, and where her depression made it difficult to move from one room to the next. She also testified that her mom helped care for her son twice a month.  The ALJ's decision summarized Plaintiff's reports and stated that she evaluated them based on the factors set forth in 20 C.F.R. § 416.929(c)(3) and Social Security Ruling 16-3p.  The ALJ found that Plaintiff's subjective reports of disabling mental symptoms were "not entirely consistent with the claimant's treatment records, including the objective medical evidence."  The ALJ then explained that the medical records showed that Plaintiff had some improvement with treatment and medication, and she exhibited normal behavior, a neat/clean appearance, a primarily appropriate affect, and unremarkable thought content/perceptions at mental status examinations during the alleged disability period.  The ALJ also noted that Plaintiff worked part-time, engaged in Facebook messaging, and reported going to a casino with co-workers.  Finally, the ALJ noted that Plaintiff stated in her function report that she had no problem getting along with authority figures, spent time with others, attends church, sporting events, and family gatherings, and enjoyed spending time with her son and boyfriend.

Plaintiff first argues that the ALJ erred because she did not consider Plaintiff's subjective reports of bad days where she could barely function.  Plaintiff argues that these subjective reports

---

[23] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

[24] *Id.* at 1167.

are supported by the opinion of her therapist, Emily Biondo. Biondo opined that Plaintiff would miss work or leave three days per month because of bad days; would be 20% off task; had moderate limitation in the ability to maintain attention and concentration for extended periods; and had marked limitation in the ability complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff argues that Biondo's opinion, coupled with her mental health treatment records, are consistent with her reported intermittent bad days, and therefore the ALJ should have addressed them in her decision.

The Court disagrees. The ALJ need not address every limitation when addressing the consistency of a claimant's allegations with the evidence as a whole.[25] Here, the ALJ made it reasonably clear that to the extent Plaintiff's symptoms would prevent her from performing simple, low-stress work with limited interaction with others the ALJ found those symptoms inconsistent with the medical evidence and her range of admitted activities. The ALJ set forth the specific evidence she relied upon in evaluating Plaintiff's symptoms. This sufficiently addresses why the ALJ did not find Plaintiff's subjective complaints of two or more bad days per week not supported by the record. Furthermore, therapist Biondo's opinion is not helpful to Plaintiff. The ALJ discounted Biondo's opinion for the same reasons she discounted Plaintiff's subjective

---

[25] *Id.* at 1169 (although "the ALJ did not explicitly state 'I find this statement credible' or 'I find this statement not credible' for each factual assertion," the evaluation was sufficient); *Bales v. Colvin*, 576 F. App'x 792, 800 (10th Cir. 2014) ("[A]n ALJ is not required to indentif[y] any specific incredible statements, so long as the ALJ indicat[es] to what extent [s]he credited what [the claimant] said when determining the limiting effect of [the claimant's symptoms]. " (internal quotation marks and citation omitted)).

complaints,[26] and Plaintiff does not argue that the ALJ erred in discounting therapist Biondo's opinion.

Plaintiff next argues that the ALJ's reasons for discounting Plaintiff's subjective reports are unsupported by the record. Plaintiff claims that the medical records cited by the ALJ as to normal mental findings also showed abnormalities such as anxious mood and affect, dysphoric mood, flat affect, and being easily distracted. Plaintiff further claims that the records the ALJ points to as showing improvement also showed that Plaintiff continued to experience anxiety and depression throughout her disability period. Plaintiff describes the ALJ's findings as a "selective reading" of the record.

Again, the Court disagrees. The ALJ's decision thoroughly describes and acknowledges Plaintiff's serious mental limitations throughout the alleged disability period. For example, the ALJ points out that in March 2019, Plaintiff reported breaking out in hives, crying, breathing problems, or racing heartbeat when she was anxious and that Plaintiff had labile mood, depression, anxiety and panic attacks. The ALJ also noted that in April 2019, Plaintiff's thought process was notable for racing thoughts and loose association between topics; in May 2019, Plaintiff was dysphoric and anxious, had impulsive behavior, and racing thoughts; in June 2019, Plaintiff was remarkable for anxious mood, and laughing at inappropriate times; in April 2020, Plaintiff had

---

[26] The ALJ found therapist Biondo's opinion partially persuasive because it was partially consistent with the record. The ALJ found that the record supports Biondo's limitation that Plaintiff is mildly limited in her ability to understand and remember and that she has marked limitation in her ability to interact with others. The ALJ found that the record did not support Biondo's opinion that Plaintiff has extreme limitations, citing Biondo's reports in March of 2019 that Plaintiff appeared neat/clean, had a normal affect, and unremarkable in her thought content and behavior; Biondo's report from July 2019 that indicated Plaintiff was intelligent, had social support, and was a good mom; Biondo's report from March of 2020 that her anxiety and depression "come and go"; records from Taryn Smith, APRN, who found that Plaintiff had fair grooming and hygiene, good eye contact, was cooperative and pleasant, regular speech, and had fair judgment and insight; and Plaintiff's function report stating that she gets along with authority figures, spends time with others, attends church, maintains her home, cares for her son, and manages a savings account and uses checks.

crying spells and ongoing anxiety; and in June 2020, Plaintiff was remarkable for anxious mood, racing thoughts and loose associations some mumbled speech, poor eye contact, and fidgeting. The ALJ did not gloss over the record as Plaintiff suggests. Instead, the ALJ recognized Plaintiff's serious mental limitations and accounted for these limitations by giving Plaintiff a very limited RFC that allowed only for simple and routine instructions in a low-stress job, no fast-paced work, brief or superficial contact with co-workers, and no interaction with the general public. The ALJ also found, however, that the record showed that Plaintiff retained certain strengths and abilities despite her limitations. To the extent there is a conflict in the record, the ALJ was entitled to resolve it.[27] Here, the ALJ did so, and the ALJ's determination is supported by substantial evidence in the record.

Finally, Plaintiff takes issue with the ALJ's assessment of Plaintiff's function report and activities of daily living. The ALJ found that Plaintiff's alleged mental limitations were inconsistent with her statements that she got along with authority figures; spent time with others; attended church, sporting events, and family gatherings; and enjoyed spending time with her son and boyfriend. Plaintiff argues that this finding is based on a "limited view" of the record because she also reported she only went to church once a month; her social activities were reduced once her impairments began; and she had difficulties in her relationships and needed help with her son.

Although the ALJ references going to church as an activity inconsistent with Plaintiff's symptoms, going to church is not referenced to such an extent that it was a significant factor in the ALJ's decision. Furthermore, contrary to Plaintiff's argument, the record shows that Plaintiff did

---

[27] *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("In short, the record contains support for both the notion that [the plaintiff] has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe. The ALJ was entitled to resolve such evidentiary conflicts and did so.").

spend time with her son and boyfriend and hung out with her coworkers and others during her alleged period of disability. Thus, these activities were, as the ALJ determined, inconsistent with Plaintiff's subjective allegations.

As to Plaintiff's activities of daily living, the ALJ noted that although Plaintiff's treatment records indicated that she was anxious and had racing thoughts, Plaintiff could perform functions that require concentration such as preparing meals, driving, providing care for her son, counting change, managing a savings account, and doing household chores. Plaintiff argues that the sporadic performance of daily activities does not support a finding of full-time work, but the record does not show that her activities of daily living were sporadic. Indeed, Plaintiff testified that her mother helped provide care for her son only twice a month, and Plaintiff cites no other daily activities that she required assistance to perform.

Plaintiff's arguments regarding her function report and activities of daily living essentially ask the Court to view the evidence in a different light. It is not the Court's job, however, to reweigh the evidence.[28] "[T]he question for the court is not whether the evidence will support a different finding or even if the evidence <u>better supports</u> a different finding. Rather the question is whether the evidence supports the [ALJ's] finding."[29] Therefore, the Court does not find that the ALJ erred in discounting Plaintiff's subjective limitations based on her function report and activities of daily living.

---

[28] *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020) ("We may neither reweigh the evidence nor substitute our judgment for that of the agency." (citation omitted)).

[29] *Noah K. v. Saul*, 2019 WL 6174373, at *3 (D. Kan. 2020).

The ALJ's evaluation of a claimant's alleged limitations is generally treated as binding on review.[30] This determination is "peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.[31]  Here, the Court concludes that the ALJ's analysis of Plaintiff's subjective complaints is supported by substantial evidence, including the medical records and Plaintiff's function report.  Therefore, the Court finds no basis to remand the case for additional findings regarding Plaintiff's subjective reports of mental limitations.

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.

This case is closed.

Dated this 22nd day of December, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[30] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (quoting *Gossett v. Bowen*, 862 F.2d 802 (10th Cir. 1988)); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983) (citations omitted).

[31] *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (quoting *Diaz v. Sec. of Health & Hum. Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).